UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

DAVID OURLICHT,

                            Plaintiff,

   -against-

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE OFFICER ASHLEY
GRIFFITH (Shield No. 19021) and NEW YORK
CITY POLICE OFFICER JOSHUA STEMBRIDGE
(Shield No. 1983), both of whom are sued in their
individual and their official capacities.

                        Defendants.

------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

**Docket No. 19-cv-3651**

Plaintiff DAVID OURLICHT, by his attorneys, Beldock Levine & Hoffman LLP, as and for his complaint against the Defendants alleges as follows:

## PRELIMINARY STATEMENT

1.     This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries Plaintiff suffered from the unconstitutional conduct of Defendants THE CITY OF NEW YORK, and New York City Police Officers ASHLEY GRIFFITH (Shield No. 19021) and JOSHUA STEMBRIDGE (Shield No. 1983).

2.     On March 23, 2018, Plaintiff David Ourlicht met a friend from college for dinner in Brooklyn, New York. At the time, Mr. Ourlicht was employed as a Law Graduate at the Legal Aid Society. While walking to the restaurant, Mr. Ourlicht and his friend were stopped by two uniformed police officers. Upon information and belief, these officers, without reasonable suspicion, stopped the two young men and accused them of smoking marijuana without reasonable suspicion. Mr. Ourlicht and his friend informed the officers that they were not and had not been

smoking marijuana. Without warning or requesting consent, the officers began unlawfully frisking and searching Mr. Ourlicht and his friend. Although they did not find any marijuana in Mr. Ourlicht's possession or see him smoking, the police officers arrested him and, upon information and belief, alleged he had been in possession of marijuana, had been smoking marijuana, and had destroyed evidence of his possession of marijuana. Mr. Ourlicht was taken to the 77th precinct for processing, told he was being processed for destruction of evidence, held for six hours, and later released when the District Attorney declined to prosecute.

3.      This was not the first time Plaintiff Ourlicht was stopped without reasonable suspicion. Just over ten years prior, Mr. Ourlicht was stopped, frisked, and searched three times in the span of six months. The policy and practice that allowed unlawful stops of hundreds of thousands of New York City residents, particularly young Black and Latinx men like Mr. Ourlicht, was challenged in *Floyd et al. v. The City of New York*, 08-CV-1034 (AT) (S.D.N.Y.), where Mr. Ourlicht was a named Plaintiff and class representative. At trial, the City was found to have maintained an unlawful policy and practice of stops, questioning, and frisks in violation of the Fourth and Fourteenth Amendments. *See Floyd v. City of New York*, 959 F.Supp.2d 540 (S.D.N.Y 2013). Although the remedies phase of *Floyd* remains ongoing, Mr. Ourlicht's experience on March 23, 2018 suggests that unlawful stops, questioning, frisks, and searches continue to burden the communities of New York City.

4.      Plaintiff Ourlicht seeks redress for the substantial injuries he suffered when he was unlawfully arrested and detained. Plaintiff seeks (i) compensatory damages for psychological and emotional distress, and other financial loss caused by the illegal actions of the Defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional

law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

5.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

6.     Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

7.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

8.     Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

## PARTIES

9.     Plaintiff DAVID OURLICHT is a citizen of the United States and the State of New York, and is an attorney at law.  At all times relevant to this complaint, Mr. Ourlicht was a resident of the State of New York, the Town of North Hempstead, and the County of Nassau.

10.     Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

11.     The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law

enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.     Defendant Police Officers ASHLEY GRIFFITH (Shield No. 19021) and JOSHUA STEMBRIDGE (Shield No. 1983) ("Individual Defendants") are NYPD Police Officers who unlawfully arrested and detained Plaintiff without any reasonably articulable suspicion of illegal activity.

13.     Upon information and belief, the Individual Defendants are still NYPD Police Officers.

14.     At all times relevant herein, the Individual Defendants have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD.

15.     At all times relevant herein, the Individual Defendants violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, of which a reasonably prudent police officer in their circumstances would have known.

## STATEMENT OF FACTS

*Plaintiff's 2008 Stops*

16.     On January 30, 2008, Plaintiff David Ourlicht was walking from class at St. John's University with his girlfriend in Queens, New York when he was stopped, questioned, and frisked by three NYPD officers.

17.     The officers asked why he was in the neighborhood and told Mr. Ourlicht that they thought he had a gun.

4

18.     The officers ordered Mr. Ourlicht to stand against a wall with his hands in the air while they patted him down, i.e., frisked and searched him.

19.     The officers found no weapons or contraband on Mr. Ourlicht.

20.     Nevertheless, the officers gave him a summons for disorderly conduct, which was later dismissed by the Queens County Criminal Court.

21.     On February 21, 2008, Mr. Ourlicht was again walking from class at St. John's University with a White classmate when they were stopped by four officers.

22.     The plain clothes officers told Mr. Ourlicht they were looking for guns, searched him, and found nothing.

23.     Upon information and belief, one officer searched Mr. Ourlicht's White classmate and found a bag of marijuana, but returned it to the classmate's pocket.

24.     The officers searched Mr. Ourlicht again and told him that if they found anything on him they would arrest him.

25.     Again, finding nothing, the officers finally allowed Mr. Ourlicht and his classmate to leave.

26.     On June 9, 2008, Mr. Ourlicht and four other young Black men were sitting on a bench outside the Johnson Houses, a New York City Housing Authority public housing complex at 116th Street and Park Avenue in Harlem, New York.

27.     The young men were resting after moving a friend's belongings out of his grandmother's apartment.

28.     An NYPD officer suddenly walked up to the group of men with his weapon drawn.

29.     The officer ordered all of the young men to get on the ground.

30.     The officer told Mr. Ourlicht that he had heard that someone had a gun.

31.     Mr. Ourlicht and the other young men remained faced down on the ground for approximately ten minutes while the officers searched them, finding nothing.

***NYPD's Unconstitutional Stop-and-Frisk Policy and Practice***

32.     The three above stop, question, and frisk incidents that Mr. Ourlicht endured, in addition to similar experiences by David Floyd, Lalit Clarkson, Deon Dennis, and others, became the basis for a class action lawsuit in which they were named as class representatives.

33.     *Floyd, et al. v. City of New York* challenged the NYPD's practice of racially profiling and unconstitutionally stopping and frisking New York City residents.

34.     In the nine-week *Floyd* trial, Judge Shira Scheindlin of the Southern District of New York heard evidence of the NYPD's stop-and-frisk practice, and its particular impact on young Black and Latinx men.

35.     In two opinions on August 12, 2013, the court found that Mr. Ourlicht's January 30, 2008 stop violated the Fourth Amendment and the NYPD's policies and practices were unconstitutional and racially discriminatory, and it detailed a set of remedies to bring those practices into constitutional compliance.  *See Floyd v. City of New York*, 959 F.Supp.2d 540 (S.D.N.Y 2013) (Liability Opinion) and *See Floyd v. City of New York*, 959 F.Supp.2d 668 (S.D.N.Y 2013) (Remedies Opinion).

36.     Since 2013, the plaintiffs in *Floyd*, and companion cases *Ligon* v. City of New York, 12-CV-2274 (AT) (S.D.N.Y.) and *Davis v. City of New York,* 10-CV-0699 (AT) (S.D.N.Y.), have been engaged in a remedial process with the NYPD and the court-appointed Monitor. The remedial process intended to create broad, systemic change is ongoing. This includes initial revisions to the NYPD Patrol Guide regarding its stop-question-and-frisk policy, widespread retraining, and other remedial efforts to reform these unconstitutional practices.

37.     The court appointed Monitor's Ninth Status Report, which was filed with the court in January of this year, detailed particular issues regarding NYPD officers' significant underreporting of the stop-and-frisks that they conduct, a widespread failure on the part of NYPD supervisors to detect and take corrective action regarding unconstitutional stops-and-frisks conducted by subordinate officers, as well as ongoing problems with the NYPD's systems for disciplining officers who commit misconduct during stops, and auditing the constitutionality of officer stop-and-frisk activity.[1]

***Plaintiff's 2018 Stop***

38.     On March 23, 2018, in Brooklyn, New York, Mr. Ourlicht, was stopped, questioned, frisked, and searched by NYPD Police Officers ("P.O.") Ashley Griffith (Shield No. 19021) and P.O. Joshua Stembridge (Shield No. 1983).  Upon information and belief, Mr. Ourlicht was arrested for allegedly possessing marijuana, publicly smoking marijuana, and destruction of evidence.

39.     At the time, Mr. Ourlicht was working as a Law Graduate at the Legal Aid Society and was due to take his Multistate Professional Responsibility Examination ("MPRE"), a requirement to join the New York State Bar, the next morning, on March 24, 2018.

40.     At approximately 4:30 p.m., Mr. Ourlicht left his work in lower Manhattan.

41.     He traveled by subway to Brooklyn, where he was planning to meet a friend from college for dinner.

42.     Mr. Ourlicht met his friend, Thomas Figueroa, near Mr. Figueroa's car at about 5:00 p.m. on Bergen Street between Franklin Avenue and Bedford Avenue.

---

[1] *Floyd, et al. v. City of New York*, 08-CV-1034 (AT), Dkt.# 680 (S.D.N.Y. Jan. 11, 2019).

43.     After meeting and talking for a few minutes, Mr. Ourlicht and Mr. Figueroa began walking toward a restaurant approximately one block away.

44.     Mr. Ourlicht and Mr. Figueroa were still walking toward the restaurant when two uniformed officers in a marked patrol vehicle interrupted them, pulling up and calling out to them while exiting the patrol vehicle.

45.     One officer asked Mr. Ourlicht and Mr. Figueroa, "What were you smoking?" As neither Mr. Ourlicht nor Mr. Figueroa had been smoking, they replied, "Nothing."

46.     The officers approached Mr. Ourlicht and Mr. Figueroa, turned them around on the sidewalk, and immediately began unlawfully frisking and searching them.

47.     P.O. Griffith frisked Mr. Ourlicht and then searched his pockets, while P.O. Stembridge did the same to Mr. Figueroa.

48.     While searching Mr. Ourlicht, P.O. Griffith accused Mr. Ourlicht of lying and continued asking him where he had the marijuana.

49.     Mr. Ourlicht consistently responded that he was not lying and did not have any marijuana.

50.     P.O. Griffith continued to search through the pockets of Mr. Ourlicht's jeans, hooded sweatshirt, and jacket.

51.     P.O. Griffith found no marijuana on Mr. Ourlicht.

52.     P.O. Stembridge found no marijuana on Mr. Figueroa.

53.     Despite finding nothing illicit or illegal on either Mr. Ourlicht or Mr. Figueroa, one officer placed Mr. Ourlicht in tightly-fastened handcuffs and told him he was being arrested for possession of marijuana and smoking marijuana in public.

54.     The officers then swapped positions and repeated their unlawful frisk and search of the young men.  This time, P.O. Stembridge searched Mr. Ourlicht and P.O. Griffith searched Mr. Figueroa.

55.     As P.O. Stembridge searched Mr. Ourlicht, he continued to ask where the marijuana was and what Mr. Ourlicht and Mr. Figueroa were smoking.

56.     Consistently, Mr. Ourlicht responded that he was not smoking and was not in possession of any marijuana.

57.     P.O. Griffith told Mr. Ourlicht he was going to look in the area where Mr. Ourlicht and Mr. Figueroa had come from, and if he found any contraband it would not be good for them.

58.     P.O. Griffith walked down the block and searched for contraband, finding nothing.

59.     The officers nevertheless placed Mr. Ourlicht into a patrol car, and Mr. Ourlicht was searched yet again.

60.     Mr. Ourlicht was searched for a fourth time by NYPD officers when they arrived at the 77th precinct.

61.     Upon arrival at the precinct, the officers told Mr. Ourlicht that this was his last opportunity to tell them that he was smoking marijuana.

62.     Mr. Ourlicht did not respond to this questioning.

63.     As he was brought before the desk sergeant, Mr. Ourlicht was informed that he was being charged with destruction of evidence, and not being charged for possession of marijuana or smoking marijuana in public.

64.     Mr. Ourlicht was not given a Desk Appearance Ticket, but instead processed for an in-court arraignment, including having his fingerprints and photograph taken.

65.     As they were placing Mr. Ourlicht in a holding cell, the officers took Mr. Ourlicht's jacket, removed the laces from his shoes, cut the drawstrings in his hooded sweatshirt, instructed him to take off his shoes and socks, and searched his wallet.

66.     As the officers searched Mr. Ourlicht's wallet, they discovered his Legal Aid Identification Card and his New York State Secure Court Pass. At that time, the officers informed Mr. Ourlicht that the entire incident would not have happened had they known he worked in the courts. Mr. Ourlicht was then locked in a holding cell at the precinct.

67.     Throughout the period of his post-arrest, pre-arraignment detention, Mr. Ourlicht worried his career would be jeopardized by this unlawful arrest. Among other things, Mr. Ourlicht feared that he would be arraigned before, or even represented by, a colleague from the Legal Aid Society.

68.     While Mr. Ourlicht was in the holding cell, P.O. Griffith told Mr. Ourlicht that he had spoken to the district attorney about the weakness of the case.

69.     P.O. Griffith also told Mr. Ourlicht that he only arrested Mr. Ourlicht because of pressure from his sergeant and/or supervisor.

70.     At approximately 11:30 p.m., after approximately six hours in custody, Mr. Ourlicht was released.   Upon information and belief, his release was pursuant to the Kings County District Attorney's declination to prosecute.

71.     Mr. Ourlicht finally returned home at approximately 2:30 a.m.

72.     Mr. Ourlicht had to take the MPRE, an examination necessary for admission to the New York State bar, at 7:00 a.m. the same morning.

73.     Mr. Ourlicht could not return to work until late the following week.

10

74.     Defendants' conduct caused Mr. Ourlicht to suffer loss of liberty, physical, emotional, and psychological pain, loss of sleep, stress, embarrassment, fear, humiliation, and deprived him of his constitutional rights.

***NYPD's Discriminatory Marijuana Summons and Arrest Policies and Practices[2]***

75.     Despite studies that consistently show that Black and Latinx individuals do not, as a group possess or use marijuana at a higher rate than White individuals,[3] New York City has historically arrested Black and Latinx individuals for marijuana offenses at a higher rate than White individuals.[4]

76.     These racial disparities in marijuana arrests and summonses persist. Despite allegedly relaxing its policy regarding marijuana arrests, the NYPD still arrests Black and Latinx individuals at a rate 15 times the rate of White individuals.[5]

77.     In the first quarter of 2018, nearly 90% of the approximately 4,000 arrests for possession of marijuana were of Black and Latinx individuals.[6]

---

[2] Drug Policy Alliance & Marijuana Arrest Research Project, UNJUST AND UNCONSTITUTIONAL: 60,000 JIM CROW MARIJUANA ARREST IN MAYOR DE BLASIO'S NEW YORK (July 2017) *available at,* http://www.drugpolicy.org/sites/default/files/Marijuana-Arrests-NYC--Unjust-Unconstitutional--July2017_2.pdf.

[3] Substance Abuse and Mental Health Services Administration Center for Behavioral Health Statistics and Quality, RESULTS FROM THE 2016 NATIONAL SURVEY ON DRUG USE AND HEALTH: DETAILED TABLES, Tables 1.32A, 3.6A (Sept. 7, 2017), *available at* https://www.samhsa.gov/data/sites/default/files/NSDUH-DetTabs-2016/NSDUH-DetTabs-2016.pdf.

[4] American Civil Liberties Union, THE WAR ON MARIJUANA IN BLACK AND WHITE (June 2013), *available at,* https://www.aclu.org/sites/default/files/field_document/1114413-mj-report-rfs-rel1.pdf.

[5] *See* Benjamin Mueller, Robert Gebeloff, and Sahil Chinoy, SUREST WAY TO FACE MARIJUANA CHARGES IN NEW YORK: BE BLACK OR HISPANIC (May 13, 2018) *available at* https://www.nytimes.com/2018/05/13/nyregion/marijuana-arrests-nyc-race.html.

[6] *See* P.R. Lockhart, BLACK PEOPLE IN NYC ARE 8 TIMES MORE LIKELY TO BE ARRESTED FOR MARIJUANA THAN WHITES (May 14, 2018) *available at* https://www.vox.com/identities/2018/5/14/17353040/racial-disparity-marijuana-arrests-new-york-city-nypd; *See also* Brendan Cheney, RACIAL DISPARITIES PERSIST IN NEW YORK CITY MARIJUANA ARRESTS (Feb. 13, 2018), *available at* https://www.politico.com/states/new-york/city-hall/story/2018/02/13/racial-disparities-continue-in-new-york-city-marijuana-arrests-248896.

78.     In the first quarter of 2019, while overall arrest numbers were down to just over 600, over 90% of those individuals arrested for possession of marijuana were Black or Latinx.[7]

79.     In the first quarter of 2019, 87% of those individuals issued summonses for possession of marijuana were Black or Latinx.[8]

80.     Year to date, 86% of arrests for Penal Law 215.40 (2), tampering with physical evidence, were of Black or Latinx individuals.[9]

81.     Upon information and belief, NYPD officers continue to allege that they smell marijuana or suspect individuals of possession of marijuana as a pretext to continue to issue summonses and arrests without reasonable suspicion, probable cause, or evidence of possession.[10]

82.     Upon information and belief, NYPD supervisors continue to pressure patrol officers to make summonses and arrests.[11]

---

[7] New York Police Department, Marijuana Arrests, 2019 First Quarter, *available at* https://www1.nyc.gov/assets/nypd/downloads/excel/analysis_and_planning/marijuana/2019/marijuana-arrests-q1-2019.xlsx.

[8] New York Police Department, Marijuana Summonses, 2019 First Quarter, *available at* https://www1.nyc.gov/assets/nypd/downloads/excel/analysis_and_planning/marijuana/2019/marijuana-summonses-q1-2019.xlsx.

[9] NYPD Arrest Data (Year to Date), *available at* https://www1.nyc.gov/assets/nypd/downloads/excel/analysis_and_planning/marijuana/2019/marijuana-summonses-q1-2019.xlsx, last accessed on June 20, 2019.

[10] See *Floyd, et al. v. City of New York*, 08-CV-1034 (AT), Dkt.# 373 at 126 ("Officers Mahoney and Giacona violated Downs's rights under the Fourth Amendment by stopping him based on a hunch, and continuing to detain him after it became clear that he had not been smoking marijuana.") and at 81 ("The foregoing evidence shows that officers are routinely subjected to significant pressure to increase their stop numbers, without corresponding pressure to ensure that stops are constitutionally justified.")

[11] *See Floyd, et al. v. City of New York*, 08-CV-1034 (AT), Dkt.# 562 at 14 (Officer Comparison of the Officer Profile, which lists an officer's arrests numbers as compared to the average of the patrol borough and city wide). *See also, Raymond, et al. v. City of New York*, 15-CV-06885-LTS, Dkt.# 1 (Class Action Complaint alleging discrimination against Black and Latinx officers in implementation of a quota system, and alleging the disproportionate and racially discriminatory impact quotas have on minority communities.).

83.     The NYPD fails to discipline patrol officers accused of misconduct, even when complaints are substantiated by the Civilian Complaint Review Board ("CCRB").[12]

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

84.     Plaintiff served a Notice of Claim upon the City of New York via eClaim on June 19, 2018, within ninety days of the events giving rise to his claim.

85.     On November 16, 2018, Plaintiff attended an examination pursuant to New York General Municipal Law § 50-h.

86.     More than thirty days have elapsed since Plaintiff served his Notice of Claim and the City has not offered adjustment or payment of his claim.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### Violations of Plaintiff's Fourth and Fourteenth Amendment Rights

87.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

88.     In committing the acts and omissions complained of herein, Defendants ASHLEY GRIFFITH (Shield No. 19021) and JOSHUA STEMBRIDGE (Shield No. 1983) ("Individual Defendants") acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including, but not limited to:

      a.   the right to be free from unreasonable search and seizure;

      b.   the right to be free from arrest without probable cause;

      c.   the right to be free from use of excessive force;

---

[12] *See generally*, Mary Jo White, THE REPORT OF THE INDEPENDENT PANEL ON THE DISCIPLINARY SYSTEM OF THE NEW YORK CITY POLICE DEPARTMENT (Jan. 25, 2019).

    d.  the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention Plaintiff was aware and to which he did not consent;

    e.  the right to be free from the lodging of false criminal charges against him by police officers and;

    f.  the right to equal protection, privileges, and immunities under the laws.

89.    In committing the acts and omissions complained of herein, Defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

90.    As a direct and proximate result of Defendants' deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

91.    The unlawful conduct of the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

92.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.    Such conduct breached the protections guaranteed to Plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 11, and 12, and including the following rights:

    a.  freedom from unreasonable search and seizure of his person and property;

    b.  freedom from arrest without probable cause;

    c.  freedom from use of excessive force;

    d.  freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention Plaintiff was aware and did not consent;

    e.   freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual Defendants and;

    f.   the right to equal protection under the laws.

94.    As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered the injuries and damages set forth above.

95.    At all relevant times, the Individual Defendants were employees of the City and were acting within the scope of their employment.

96.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of the Individual Defendants set forth herein.

### THIRD CAUSE OF ACTION
### False Arrest and False Imprisonment

97.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.    The Individual Defendants, through the foregoing acts, caused Plaintiff to be wrongfully detained and arrested without good faith, reasonable suspicion, or legal justification, and of which detention Plaintiff was aware and to which he did not consent.

99.    Individual Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

100.    At all relevant times, the Individual Defendants were employees of the City and were acting within the scope of their employment.

101.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of the Individual Defendants set forth herein.

## FOURTH CAUSE OF ACTION
### Assault and Battery

102.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103.    The Individual Defendants, through the foregoing acts, without just cause or consent, wilfully and maliciously used harmful and/or offensive physical force against Plaintiff to arrest him and placed him in apprehension of imminent harm.

104.    Individual Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

105.    At all relevant times, the Individual Defendants were employees of the City and were acting within the scope of their employment.

106.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of the Individual Defendants set forth herein.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

107.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108.    The Individual Defendants, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused Plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

109.    The Individual Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

110.    At all relevant times, the Individual Defendants were employees of the City and were acting within the scope of their employment.

111.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of the Individual Defendants set forth herein.

## SIXTH CAUSE OF ACTION
### Negligence

112.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

113.    The Individual Defendants owed Plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

114.    The Individual Defendants, through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

115.    All of these acts were performed without any negligence on the part of Plaintiff and were the proximate cause of the injuries to Plaintiff.

116.    At all relevant times, the Individual Defendants were employees of the City and were acting within the scope of their employment.

117.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of the Individual Defendants set forth herein.

## SEVENTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision Under State Law

118.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.    The City is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its

agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the Defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages from the Individual Defendants to the extent allowable by law;

(c)    attorney's fees;

(d)    the costs and disbursements of this action;

(e)    interest; and

(f)    such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 21, 2019

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26/PH Suite
New York, New York 10016
(212) 490-0400

JONATHAN C. MOORE
LUNA DROUBI
DOMINIQUE DAY

*Attorneys for Plaintiff David Ourlicht*